# In the United States Court of Federal Claims

No. 18-1275

Filed: October 22, 2018[*]

*******************************************

IDEAL INDUSTRIES, INC.,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant,

and

SNAP-ON INDUSTRIAL,

    Defendant-Intervenor.

*******************************************

5 U.S.C. § 706 (Administrative Procedure Act, Scope of Review);
28 U.S.C. § 1491 (Tucker Act Jurisdiction);
48 C.F.R. §§ 15.402 (Pricing Policy);
   15.403-1 (Prohibition On Obtaining Certified Cost Or Pricing Data);
   15.403-3 (Requiring Data Other Than Certified Cost Or Pricing Data);
   15.404-1 (Proposal Analysis Techniques);
RCFC 52.1 (Motion For Judgment On The Administrative Record).

**James Wayne Kim**, McDermott Will & Emery LLP, Washington, D.C., Counsel for Plaintiff.

**Tanya Beth Koenig**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Lee Paul Curtis**, Perkins Coie, Washington, D.C., Counsel for Defendant-Intervenor.

### MEMORANDUM OPINION AND FINAL ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**BRADEN**, *Senior Judge*.

    This case concerns a federal agency's decision to take corrective action and whether the scope was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The United States Court of Appeals for the Federal Circuit recently issued a

---

[*] On October 17, 2018, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that required correction. The parties had until October 22, 2018 at 3:00 p.m. EDT, to file any proposed redactions or revisions. No proposed redactions or revisions were submitted before the court's deadline.

precedential decision that is dispositive of this bid protest. *See Dell Federal Systems, L.P. v. United States*, No. 2017-2516, 2018 WL 4839542 (Fed. Cir. Oct. 5, 2018).

## I.     RELEVANT FACTUAL BACKGROUND.[1]

The United States Department of the Army ("Army") and United States Marine Corps ("the Marine Corps") decided to purchase additional General Mechanics Tool Kits ("GMTKs"). Tab 6, AR 27. A GMTK is "a soldier-portable tool kit designed for use by tracked vehicle mechanics, wheeled vehicle mechanics, ground support equipment mechanics, and prime power production specialists." Tab 6, AR 23. A GMTK is "typically used in combat/support situations by both the Army and Marine Corps mechanics requiring highly specialized hand tools for maintenance of vehicle platforms." Tab 6, AR 23.

On October 30, 2017, United States Army Contracting Command in Warren, Michigan ("Agency") issued Solicitation No. W56HZV-16-R-0092 ("Solicitation") to purchase additional GMTKs. Tab 16, AR 96. The Solicitation called for proposals to enter into a "firm fixed price, Indefinite Delivery, Indefinite Quantity Contract for 5 one-year ordering periods." Tab 16, AR 98. The Agency's evaluation of proposals would be conducted "on a lowest price technically acceptable basis in accordance with [Federal Acquisition Regulation ("FAR")] 15.101-2(a)."[2] Tab 16, AR 98.

Section L of the Solicitation sets forth the information required to be submitted with a proposal. Tab 16, AR 149. As relevant here, subsection L.4.2 of the Solicitation states:

> [t]he Offeror is required to submit data other than certified cost or pricing data, [in accordance with ("IAW")] FAR 15.403-3(c), to support the proposed prices, including any offered discounts, established catalog prices, price lists, or other verifiable and established records that are regularly maintained by the vendor and published or otherwise available for customer inspection. The above information is intended to establish the reasonableness of the Offeror's proposed prices.

Tab 16, AR 150. The next subsection, L.4.3, states: "[o]fferors shall describe the basis for any out-year escalation used in the calculation of the out-year prices." Tab 16, AR 150.

---

[1] The facts recited herein were derived from the Administrative Record (Tabs 1–90, AR 1–3225).

[2] FAR 15.101-2(a) states:

The lowest price technically acceptable source selection process is appropriate when best value is expected to result from selection of the technically acceptable proposal with the lowest evaluated price.

48 C.F.R. § 15.101-2(a).

Section M of the Solicitation lists each of the evaluation factors. Tab 16, AR 151. But, subsection M.2.1 cautions offerors to "carefully read, and provide all the information requested in Section L." Tab 16, AR 151. Subsection M.2.1 also reserves the Agency's right to "reject any or all proposals if such action is in the Government's best interest." Tab 16, AR 151.

Six companies submitted offers to the Agency in response to the Solicitation. Tabs 22–27, AR 363–1512. Snap-On Industrial ("Snap-On") submitted the lowest priced offer and IDEAL Industries, Inc. ("IDEAL") submitted the second lowest priced offer. Tab 28, AR 1513. Consistent with the lowest price technically acceptable method, the Agency evaluated Snap-On's offer first. Tab 30, AR 1518. Snap-On's offer was rejected, however, because the Agency was not able to "determine the offer to be fair and reasonable based on the supporting documentation received." Tab 30, AR 1521. Specifically, the Agency found Snap-On's offer deficient, because:

> [t]he offeror did not provide the following data required by the [S]olicitation:
> - Support IAW L.4.2 other than certified cost and price data.
> - Support IAW L.4.3 describe the basis for any out-year escalation used in the calculation of the out-year prices.

Tab 30, AR 1521.

On January 8, 2018, the Agency conducted a price evaluation of IDEAL's offer and found that it was fair and reasonable. Tab 31, AR 1526. On January 25, 2018, the Agency conducted a technical evaluation of IDEAL's offer and found it acceptable. Tab 35, AR 1548. On February 8, 2018, the Agency awarded the contract to IDEAL. Tab 39, AR 1656. That same day, the Agency delivered unsuccessful notices to the other offerors, including Snap-On. Tab 41, AR 1700.

On February 9, 2018, Snap-On requested a debriefing from the Agency. Tab 42, AR 1701. The debriefing took place on March 7, 2018. Tab 45, AR 1790. The next day, the Agency provided a response to two questions raised by Snap-On. Tab 45, AR 1811.

On March 13, 2018, Snap-On filed a protest with United States Army Materiel Command arguing that the Solicitation's request for submission of price data conflicted with FAR 15.402(a)(2)[3] and was not necessary to determine price reasonableness. Tab 46, AR 1814.

---

[3] FAR 15.402(a)(2) states:

When certified cost or pricing data are not required by 15.403-4, [the contracting officer] shall obtain data other than certified cost or pricing data as necessary to establish a fair and reasonable price, generally using the following order of preference in determining the type of data required:

(i)   No additional data from the offeror, if the price is based on adequate price competition, except as provided by 15.403-3(b).

(ii)  Data other than certified cost or pricing data such as -

3

On March 19, 2018, the Agency issued a Stop Work Order to IDEAL. Tab 47, AR 1839. On April 30, 2018, the Agency issued a Memorandum describing the corrective action it decided was required in light of Snap-On's protest. Tab 48, AR 1840–41. IDEAL's contract award would be terminated, for convenience, and the Solicitation would be reissued with three changes:

- an increase in the estimated quantities of GMTKs;
- a small change in the tool layout; and
- the removal of the requirement that offerors submit supporting price data.

Tab 48, AR 1840–41.

On May 11, 2018, United States Army Materiel Command dismissed Snap-On's protest, because the Agency decided to take the corrective action. Tab 49, AR 1843.

On May 18, 2018, the Agency terminated IDEAL's contract for convenience. Tab 50, AR 1845. That same day, the Agency reopened the Solicitation and issued Amendment 006 ("Amended Solicitation") adding the three changes described in the April 30, 2018 Memorandum. Tab 56, AR 1873. Regarding supporting price data, the Amended Solicitation subsection L.5.2 states: "In accordance with FAR 15.403(a)(1), certified cost or pricing data is not required for initial proposal submission[s]." Tab 56, AR 1896. Subsection M.4.2.2 further emphasized: "The Government may make a determination of price reasonableness by any means allowable." Tab 56, AR 1900.

On May 24, 2018, IDEAL filed a protest with the Government Accountability Office ("GAO") alleging: (1) the Agency provided "no rationale" for corrective action; (2) the Amended Solicitation did not make any material change to the original Solicitation; and (3) the Agency's decision to release IDEAL's pricing information from the initial round of offers "materially disadvantage[d] IDEAL's competition position." Tab 63, AR 2011.

---

(A) Data related to prices (e.g., established catalog or market prices, sales to non-governmental and governmental entities), relying first on data available within the Government; second, on data obtained from sources other than the offeror; and, if necessary, on data obtained from the offeror. When obtaining data from the offeror is necessary, unless an exception under 15.403-1(b)(1) or (2) applies, such data submitted by the offeror shall include, at a minimum, appropriate data on the prices at which the same or similar items have been sold previously, adequate for evaluating the reasonableness of the price.

(B) Cost data to the extent necessary for the contracting officer to determine a fair and reasonable price.

48 C.F.R. § 15.402(a)(2).

On July 26, 2018, the GAO denied IDEAL's protest, because "the termination of IDEAL's contract, reopening of the [Request for Proposals], and changes made by Amendment [00]6 are well within the [A]gency's broad discretion to take corrective action."  Tab 70, AR 2446.

On July 11, 2018, Snap-On, IDEAL, and one other company submitted new offers in response to the amended Solicitation.  Tabs 71–73, AR 2448–2985.  Again, Snap-On submitted the lowest priced offer and IDEAL submitted the second lowest priced offer.  Tab 77, AR 3018.

On July 30, 2018, the Agency conducted a technical evaluation of Snap-On's offer and IDEAL's offer, finding both to be "acceptable."  Tabs 79–80, AR 3070–3079.

On July 31, 2018, the Agency conducted a price evaluation of Snap-On's offer and found it to be "reasonable."  Tab 81, AR 3083.  On August 10, 2018, the Agency awarded Snap-On Contract No. W56HZV18D0079.  Tab 86, AR 3143.  That same day, the Agency informed IDEAL that its offer was not accepted.  Tab 85, AR 3142.

On August 13, 2018, IDEAL requested a debriefing.  Tab 88, AR 3189.  That debriefing took place on August 20, 2018.  Tab 89, AR 3191.

## I.   PROCEDURAL HISTORY.

On August 22, 2018, IDEAL filed a Complaint ("Compl.") in the United States Court of Federal Claims, under seal, alleging that the Agency unlawfully terminated the February 8, 2018 contract with IDEAL and improperly reopened the Solicitation for new offers.  ECF No. 1.  The Government agreed to a stay of performance through November 2, 2018.  ECF No. 1 at 1–2.

On August 22, 2018, IDEAL also filed a Motion For Leave To File Under Seal, ECF No. 5, and a Motion For A Protective Order, ECF No. 6.  On August 23, 2018, Snap-On filed an Unopposed Motion To Intervene.  ECF No. 11.  That same day, the court granted all three motions.  ECF Nos. 9, 13.

On August 23, 2018, IDEAL and the Government filed a Joint Motion For The Entry Of The Proposed Schedule with a proposed ruling date no later than November 2, 2018.  ECF No. 10 at 1.  On August 24, 2018, Snap-On consented to the proposed schedule.  ECF No. 14.  On August 27, 2018, the court granted in-part and denied in-part the parties' proposed schedule.  ECF No. 16.

On September 14, 2018, IDEAL filed a Motion For Judgment On The Administrative Record ("Pl. Br.").  ECF No. 21.

On September 24, 2018, the Government filed a Cross-Motion For Judgment On The Administrative Record And Opposition To Plaintiff's Motion For Judgment On The Administrative Record ("Gov't Br."), together with a declaration executed by the Agency Contracting Officer ("CO").  ECF No. 22.  Therein, the CO averred that the Army's shortage of GMTKs has "result[ed] in the inability of soldiers to maintain their equipment, . . . which creates a critical soldier safety-of-life situation."  ECF No. 22-1.  That same day, Snap-On filed a Cross-Motion For Judgment On The Administrative Record And Opposition To Plaintiff Ideal's Motion For Judgment On The Administrative Record ("Int. Br.").  ECF No. 33.

On October 1, 2018, IDEAL filed a Response And Reply To Defendant's And Intervenor's Cross-Motions For Judgment On The Administrative Record ("Pl. Reply").  ECF No. 24.

On October 9, 2018, the Government filed a Reply In Support Of Cross-Motion For Judgment On The Administrative Record ("Gov't Reply").  ECF No. 25.  That same day, Snap-On filed a Reply To Plaintiff's Response And Reply To Defendant's And Intervenor's Cross-Motions For Judgment On The Administrative Record ("Int. Reply").  ECF No. 26.

## II.   DISCUSSION.

### A.   Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Pursuant to the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870 (Oct. 19, 1996), the United States Court of Federal Claims has jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*. . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (italics added).

IDEAL's August 22, 2018 Complaint alleges that the Agency unlawfully terminated the February 8, 2018 Contract with IDEAL and improperly took corrective action by amending the Solicitation.  Compl. ¶ 3.  These allegations properly state a bid protest claim under 28 U.S.C. § 1491(b)(1).  *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed. Cir. 2012) (holding that it is "clear" that "bid protest jurisdiction arises when an agency decides to take corrective action").

For these reasons, the court has determined that it has subject matter jurisdiction to adjudicate the claim alleged in the August 22, 2018 Complaint.

### B.   Standing.

The United States Court of Federal Claims, although an Article I court, "applies the same standing requirements enforced by other federal courts created under Article III."  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).  Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  *Bank of Am.*

6

*Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017).  To demonstrate the existence of a case or controversy, a plaintiff must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'"  *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

In addition, the Tucker Act "imposes more stringent standing requirements than Article III."  *Weeks Marine*, 575 F.3d at 1359.  Standing under § 1491(b)(1) "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract."  *Id.*  Thus, a plaintiff who wishes to advance a bid protest in this court must establish that it "(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest."  *Id.* (modifications in original).

In this case, IDEAL was an actual bidder and awardee with respect to the original Solicitation.  But for the Agency's decision to take corrective action by terminating the February 8, 2018 Contract for convenience, IDEAL would have performed under the February 8, 2018 Contract and received compensation, satisfying the requirement that IDEAL have a direct economic interest that was adversely affected and that the court may remedy.  *See Sys. Application*, 691 F.3d at 1382 ("An arbitrary decision to take corrective action without adequate justification forces a winning contractor to participate in the process a second time and constitutes a competitive injury to that contractor.").

For these reasons, the court has determined that IDEAL has standing to challenge the Agency's decision to take corrective action.

    **C.**    **Standard Of Review.**

Rule 52.1 of the United States Court of Federal Claims ("RCFC") authorizes a party to move for judgment on the administrative record.  *See* RCFC 52.1.  "In deciding these motions, the court considers 'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'"  *Palantir USG, Inc. v. United States*, No. 2017-1465, 2018 WL 4356686, at *6 (Fed. Cir. Sept. 7, 2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (Fed. Cl. 2006)).

The Administrative Dispute Resolution Act amended the Tucker Act, 28 U.S.C. § 1491, to authorize the United States Court of Federal Claims to adjudicate bid protests under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  Thereunder, an agency's procurement decision "must be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'without observance of procedure required by law.'"  *Palantir*, 2018 WL 4356686, at *6 (quoting 5 U.S.C. § 706(2)).  In applying this standard, a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Id.* (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  But, the court "is not empowered to substitute its judgment for that of the agency."  *Id.*

### D. Whether The Agency's Decision To Take Corrective Action Was Arbitrary, Capricious, Or An Abuse Of Discretion.

#### 1. IDEAL Industries, Inc.'s Complaint.

Count I of the August 22, 2018 Complaint alleges that the Agency's decision to terminate IDEAL's award and issue the Amended Solicitation was "arbitrary, capricious and a violation of applicable law, because the Solicitation contained no actual improprieties." Compl. ¶ 24. In addition, Count I alleges that "the Unsuccessful Offeror's proposal was correctly deemed technically unacceptable[,] because it failed to conform to the Solicitation's requirements." Compl. ¶ 24.

Count II of the August 22, 2018 Complaint alleges that the Agency's decision to terminate IDEAL's award responded to an untimely protest, *i.e.*, "outside the bounds of FAR 33.103(e)'s timeliness requirements." Compl. ¶ 26.

Count III of the August 22, 2018 Complaint alleges that the Agency terminated IDEAL's contract award "without a rational basis," because the Amended Solicitation "contain[ed] no material changes to the Solicitation that could justify re-soliciting proposals from all Offerors." Compl. ¶ 28.

#### 2. IDEAL Industries, Inc.'s Motion For Judgment On The Administrative Record.

IDEAL argues that the Agency's decision to take corrective action by terminating the February 8, 2018 Contract for convenience, amend the Solicitation, and conduct a new round of competition lacked a rational basis. That is so, because the original Solicitation made it clear to offerors that "the Agency would eliminate proposals that failed to provide supporting documentation." Pl. Br. at 9. Also, the Agency's reliance on *McCann-Erickson USA, Inc.*, B-414787, 2017 CPD ¶ 300 (Sept. 18, 2017), in the April 30, 2018 Memorandum was improper, because that case dealt with a different solicitation than the one at issue here. Pl. Br. at 11. In addition, the Agency's decision to terminate the February 8, 2018 Contract was the result of an untimely protest, because Snap-On's protest was filed on March 13, 2018, more than ten days after February 8, 2018—the date Snap-On was informed by the Agency that it would not be awarded a contract under the amended Solicitation. Pl. Br. at 12–15 (quoting FAR 33.103(e) ("protests shall be filed no later than 10 days after the basis of protest is known or should have been known, whichever is earlier")).

In addition, the Agency's decision to amend the Solicitation was arbitrary and lacked a rational basis, because a less restrictive alternative was available. Pl. Br. at 16. For example, if the Agency wanted to increase the maximum quantity of GMTKs, the "proper course of action" would have been to "issue a follow-on solicitation." Pl. Br. at 16.

#### 3. The Government's Response And Cross-Motion For Judgment On The Administrative Record.

The Government responds that the Agency's decision to take corrective action was rational, because it addressed three errors in the original Solicitation. Gov't Br. at 15. First, the Solicitation

did not put offerors on notice that failure to follow proposal instructions would result in elimination. Gov't Br. at 15. Second, the Solicitation's requirement that offerors submit data, other than certified cost or pricing data, was inconsistent with FAR 15.402. Gov't Br. at 17. Third, the Solicitation did not account for a large increase in the quantity of GMTKs required by the Agency. Gov't Br. at 19. In response to IDEAL's suggestion that the Agency should have issued a follow-on solicitation, the Government explains that an "increase in the estimated maximum quantity would likely result in a per unit price reduction." Gov't Br. at 20.

The Government also refutes IDEAL's argument that Snap-On's agency-level protest was filed too late. Gov't Br. at 21 (citing FAR 33.103).[4] The timeliness of Snap-On's protest has no bearing on whether the Agency's decision to take corrective action was rational. Gov't Br. at 21. As such, IDEAL is not entitled to injunctive relief. Gov't Br. at 23–25.

### 4. Snap-On Industrial's Response And Cross-Motion For Judgment On The Administrative Record.

Snap-On responds that the March 13, 2018 protest to United States Army Materiel Command was timely, but even if it was not timely, a late protest is not a sufficient basis to render the Agency's decision to take corrective action arbitrary. Int. Br. at 9–12.

In this case, the Agency improperly excluded Snap-On's first offer, because it did not include supporting price data. Int. Br. at 14–15. In addition, FAR 15.402(a) establishes a "hierarchy of information types for the Government's use in making [its price reasonableness] determination." Int. Br. at 16. The Agency, however, failed to adhere to that hierarchy in that first round of evaluations and therefore acted "arbitrarily and irrationally" in requiring cost or pricing data that it did not need. Int. Br. at 16–20.

The bottom line is that the three changes that the Agency made in the Amended Solicitation were "more than insubstantial." Int. Br. at 25. If one of the Agency's changes to the Solicitation is sufficient to justify corrective action "the analysis ends," because, as a general matter, an agency "has every right to make changes to the solicitation to meet . . . evolving needs." Int. Br. at 25.

---

[4] FAR 33.103 states, in relevant part:

> If there is an agency appellate review of the contracting officer's decision on the protest, it will not extend GAO's timeliness requirements. Therefore, any subsequent protest to the GAO must be filed within 10 days of knowledge of initial adverse agency action (4 C.F.R. [§] 21.2(a)(3)).

48 C.F.R. § 33.103(d)(4).

> **5. IDEAL Industries, Inc.'s Reply In Support Of The Motion For Judgment On The Administrative Record And Response To The Government's And Snap-On Industrial's Cross-Motions For Judgment On The Administrative Record.**

IDEAL adds that there is no "debriefing exception" to the ten day deadline for filing an agency-level protest. Pl. Reply at 1. Therefore, any corrective action taken in response to an untimely protest is arbitrary and capricious. Pl. Reply at 6. Together, these two arguments defeat any rational basis for the Agency's actions. Pl. Reply at 8.

In the alternative, even if FAR 15.403-3(b) disfavors requiring price data from offerors, "it does not prohibit" doing so, because FAR 15.404-1(b)(2) contemplates that the Agency will conduct an analysis of cost or pricing data provided by an offeror. Pl. Reply at 8–9. In other words, "the FAR does not preclude an agency from requesting this data." Pl. Reply at 9.

> **6. The Government's Reply In Support Of Its Cross-Motion For Judgment On The Administrative Record.**

The Government replies that "an agency is not required to demonstrate that its own initial action was *irrational* to demonstrate that its corrective action is itself *rational*." Gov't Reply at 4 (emphasis in original). On the issue of timeliness, the Agency had discretion to consider untimely protests. Gov't Reply at 4–5. Moreover, the original Solicitation was not clear whether an offer should include "other than certified cost or pricing data." Gov't Reply at 7–8. Therefore, it was rational for the Agency to amend the Solicitation, because the original Solicitation conflicted with FAR 15.402, and the Agency realized that the quantity of GMTKs needed to be increased. Gov't Reply at 10.

> **7. Snap-On Industrial's Reply In Support Of The Cross-Motion For Judgment On The Administrative Record.**

Snap-On contends that "[p]rocuring agencies must be free to take corrective action to address defects whenever they are identified, irrespective of a possible procedural defect in the protest itself." Int. Reply at 2. In this case, the Agency's April 30, 2018 Memorandum relied on two distinct bases for revising the Solicitation: first, the GAO's decision in *McCann-Erickson*; and second, the arguments raised in Snap-On agency-level protest. Int. Reply at 6–10.

### E. The Court's Resolution.

#### 1. Count I Of The August 22, 2018 Complaint.

Count I of the August 22, 2018 Complaint is based on the premise that "the Solicitation contained no actual improprieties." Compl. ¶ 24. FAR 15.402(a) requires that a contracting officer "purchase supplies and services from responsible sources at fair and reasonable prices." 48 C.F.R. § 15.402(a). To determine whether a price is fair and reasonable, FAR Section 15.402 permits an agency to obtain "other than certified cost or pricing data as necessary." *Id.* That same section also sets forth an order of preference that an agency should "generally" follow "in determining the type of data required." *Id.* Absent "unusual circumstances," the agency should not require "additional data from the offeror, if the price is based on adequate price competition," except as

provided by FAR 15.403-3(b), *i.e.*, "when adequate price competition exists." *Id.* Where price competition exists, however, an agency may rely on price data: "available within the Government;" "obtained from sources other than the offeror;" and "if necessary, on data obtained from the offeror." *Id.* In this manner, FAR 15.402 expresses a preference that agencies not require price data from offerors, unless it is necessary to determine whether competition exists.

In this case, the original Solicitation allowed the Agency to consider price reasonableness, based on whether there was adequate price competition. Tab 81, AR 3082–85. Therefore, the original Solicitation should not have been construed by the Agency to require offerors to submit additional price or cost data. Other sections of the FAR reinforce this interpretation of Section 15.402. For example, FAR 15.403-3(b) provides:

> When adequate price competition exists (*see* 15.403-1(c)(1)), generally *no additional data are necessary* to determine the reasonableness of price. However, if there are unusual circumstances where it is concluded that additional data are necessary to determine the reasonableness of price, the contracting officer shall, *to the maximum extent practicable*, obtain the additional data from sources other than the offeror. In addition, the contracting officer should request data to determine the cost realism of competing offers or to evaluate competing approaches.

48 C.F.R. § 15.403-3(b) (emphases added).

IDEAL, however, does not argue that the first round offers did not evidence adequate price competition. Therefore, no additional data was needed to determine price reasonableness. And, even if the existence of adequate price competition was questionable, IDEAL made no showing of "unusual circumstances" that would justify requiring additional data from offerors. *See* 48 C.F.R. § 15.403-3(b).

By requiring unnecessary data from offerors, the Agency arguably violated FAR 15.402. Therefore, it was not arbitrary, capricious, or an abuse of discretion for the Agency to terminate IDEAL's February 8, 2018 Contract for convenience[5] and take corrective action set forth in the April 30, 2018 Memorandum. *See Dell*, 2018 WL 4839542, at *9 (holding that an agency's corrective action was "reasonable . . . in light of a defective procurement").

---

[5] FAR 49.502(b)(1)(i) requires that certain contracts, including Contract No. W56HZV-18-D-0028, contain the termination clause set forth in FAR 52.249-2, that states: "The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-2(a).

IDEAL's Reply Brief cites FAR 15.404-1(b)(2)[6] as support for arguing that additional price data "ensures a fair and reasonable price." Pl. Reply Br. at 8. But, that regulation states: "other

---

[6] FAR 15.404-1(b)(2) states:

The Government *may use* various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:

(i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price (*see* 15.403-1(c)(1)(i)).

(ii) Comparison of the proposed prices to historical prices paid, whether by the Government or other than the Government, for the same or similar items. This method may be used for commercial items including those "of a type" or requiring minor modifications.

    (A) The prior price must be a valid basis for comparison. If there has been a significant time lapse between the last acquisition and the present one, if the terms and conditions of the acquisition are significantly different, or if the reasonableness of the prior price is uncertain, then the prior price may not be a valid basis for comparison.

    (B) The prior price must be adjusted to account for materially differing terms and conditions, quantities and market and economic factors. For similar items, the contracting officer must also adjust the prior price to account for material differences between the similar item and the item being procured.

    (C) Expert technical advice should be obtained when analyzing similar items, or commercial items that are "of a type" or requiring minor modifications, to ascertain the magnitude of changes required and to assist in pricing the required changes.

(iii) Use of parametric estimating methods/application of rough yardsticks (such as dollars per pound or per horsepower, or other units) to highlight significant inconsistencies that warrant additional pricing inquiry.

(iv) Comparison with competitive published price lists, published market prices of commodities, similar indexes, and discount or rebate arrangements.

(v) Comparison of proposed prices with independent Government cost estimates.

(vi) Comparison of proposed prices with prices obtained through market research for the same or similar items.

than certified cost or pricing data . . . provided by the offeror" may be considered in assessing price reasonableness. *See* 48 C.F.R. § 15.404-1(b)(2)(vii). Moreover, FAR 15.404-1(b)(3) emphasizes that two other ways of conducting a price reasonableness analysis are "preferred:" "Comparison of proposed prices received in response to the solicitation;" and "Comparison of proposed prices to historical prices paid . . . for the same or similar items." 48 C.F.R. § 15.404-1(b)(2), (3). By taking corrective action, the Agency mirrored the FAR's "preferred" price reasonableness analysis.

For these reasons, Count I of the August 22, 2018 Complaint must be dismissed.

### 2. Count II Of The August 22, 2018 Complaint.

Count II of the August 22, 2018 Complaint raises the issue of timeliness. Compl. ¶ 26 ("[T]here are not circumstances that IDEAL is aware of that would justify the Agency's consideration of [Snap-On's] protest outside the bounds of FAR 33.103(e)'s timeliness requirements"). Because the court has determined that the Agency had a rational basis for terminating IDEAL's February 8, 2018 Contract for convenience and taking corrective action set forth in the April 30, 2018 Memorandum, the court does not need to determine whether Snap-On's agency-level protest was timely. Assuming *arguendo* that Snap-On's protest was not timely, that alone is not sufficient to render the Agency's otherwise rational course of conduct irrational. *See Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 186, 197 (Fed. Cl. 2011) (determining that "arguments based on . . . timeliness are irrelevant to the [c]ourt's ultimate determination of the rationality of [an agency's] decision to revise the [Request for Proposals]").

For these reasons, Count II of the August 22, 2018 Complaint must be dismissed.

### 3. Count III Of The August 22, 2018 Complaint.

Count III of the August 22, 2018 Complaint alleges that the Amended Solicitation "contains no material changes to the [original] Solicitation that could justify re-soliciting proposals." Compl. ¶ 28. Although the April 30, 2018 Memorandum did not directly address price, the Amended Solicitation reflects that Snap-On's argument challenging the Agency's unwarranted consideration of cost and price data was the principal reason that the Agency decided to take corrective action. Moreover, corrective action is rational—and sometimes even required—when necessary to ensure that a procurement be conducted in compliance with "applicable procurement statutes and regulations." *Dell*, 2018 WL 4839542, at *8. Therefore, the court also does not need to determine whether the Agency's reliance on the GAO's decision in *McCann-Erickson*—determining that "nothing in [a] solicitation's evaluation criteria advised offerors that [an] agency would perform a preliminary compliance review of proposals to determine whether firms had complied strictly with the solicitation's proposal preparation instructions"—was arbitrary and capricious. Although the Agency found the reasoning of that GAO opinion helpful

---

    (vii)    Analysis of data other than certified cost or pricing data (as defined at 2.101) provided by the offeror.

48 C.F.R. § 15.404-1(b)(2) (emphasis added).

in considering the scope of the April 30, 2018 Memorandum, it was not dispositive of corrective action the Agency decided was necessary.  Tab 48, AR 1840.

For these reasons, Count III of the August 22, 2018 Complaint must be dismissed.

### III.   CONCLUSION.

For the reasons discussed herein, Plaintiff's September 14, 2018 Motion For Judgment On The Administrative Record is denied; the Government's September 24, 2018 Cross-Motion For Judgment On The Administrative Record is granted.  Snap-On's September 24, 2018 Cross-Motion For Judgment On The Administrative Record is moot.


**IT IS SO ORDERED.**

                                                                                    s/ Susan G. Braden
                                                                                    **SUSAN G. BRADEN**
                                                                                    **Senior Judge**